UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARL W.,

                Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security, [1]

                Defendant.

CASE NO. C18-5961-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is AFFIRMED.

/ / /

/ / /

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted for Nancy A. Berryhill as defendant in this suit.

ORDER
PAGE - 1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1985.[2] He completed the ninth or tenth grade of school, does not have a GED, and has no past relevant work. (AR 39, 55, 213, 222.)

Plaintiff protectively filed an SSI application in March 2015, alleging disability beginning January 1, 1988. (AR 204.) His application was denied initially and on reconsideration.

On September 20, 2016, ALJ S. Andrew Grace held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 34-59.) Plaintiff amended his alleged onset date to March 23, 2015. (*See* AR 15, 37.) The ALJ held a second hearing on January 10, 2017, taking testimony from plaintiff and a medical expert (ME). (AR 60-82.) On October 16, 2017, the ALJ issued a decision finding plaintiff not disabled. (AR 15-26.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on September 27, 2018 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ noted plaintiff's testimony he performed some community service/volunteer work at a food bank in 2015 and found he had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be

---

[2] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 2

determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's tetralogy of Fallot with pulmonary valve regurgitation status post pulmonary valve replacement, heart murmur, pulmonic stenosis, pulmonic regurgitation, depression, and learning disorder not otherwise specified severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform sedentary work, with the following limitations: never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs and stoop, kneel, crouch, and crawl; avoid concentrated exposure to extreme temperatures, pulmonary irritants, and hazards; limited to simple, routine, repetitive tasks consistent with unskilled work and low stress work, defined as work requiring few decisions/changes; and occasional contact with co-workers, but no public contact. Plaintiff had no past relevant work to consider.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a table worker, semiconductor dye loader, and semiconductor wafer breaker.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported

by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in developing the record concerning whether he met or equaled a cardiac listing and that this matter should be remanded to cure this harmful error. The Commissioner denies any error and argues the ALJ's decision should be affirmed.

## Cardiac Listing

Plaintiff's contention the ALJ erred in failing to develop the record regarding a cardiac listing relates to the hearing testimony of the ME, Dr. David West. The ME first opined that, while plaintiff had life-long cardiac abnormalities that put him at the "light to medium category" of work, the evidence did not support the conclusion he met a listing. (AR 66-67.) The ALJ thereafter inquired into the proper listing category and plaintiff's condition prior to cardiac surgery in early 2016. (AR 67-71.) The ME noted the absence of results from a pre-surgery cardiac catheterization procedure showing a pulmonary artery measure that would allow for a determination regarding Listing 4.06C. (*Id.*) The ALJ asked, setting aside such testing results and looking solely at plaintiff's symptom reporting in the year prior to surgery, whether the ME could say plaintiff met or equaled a listing or whether he would require more information to make that determination. (AR 70-71.) The ME stated pulmonary hypertension might have explained the chest pain reported, that Listing 4.06C looked for pulmonary artery systolic pressure over at least seventy percent, and that it was "quite possible. . . maybe even probable" plaintiff met that level, but he did not offer

ORDER
PAGE - 4

any further opinion in light of the absence of test results. (AR 71-73.) Responding to additional questions from the ALJ, the ME testified, for the period prior to surgery, plaintiff would have been more limited, in the sedentary to light work category, and would not miss work very often, except to see the doctor every few months. (AR 73-74.)

Counsel for plaintiff did not have further questions for the ME. (AR 80.) The ALJ indicated an interest in more information regarding the catheterization issue and discussed obtaining additional records with counsel. (AR 80-81.) The ALJ subsequently obtained records associated with the catheterization procedure (AR 667-78) and sent them to the ME (*see* AR 680). In a letter dated June 16, 2017, the ME stated he was unable to adequately recollect what was said in the hearing five months earlier and render an opinion. (AR 680.) He suggested an interrogatory be sent to a different cardiologist. Without consulting a different cardiologist, the ALJ issued the decision and concluded plaintiff did not meet or equal a listing. (*See* AR 18.)

Because the ALJ asked the ME for additional information after receiving the cardiac catheterization procedure results, plaintiff argues the record is clear the ALJ needed the ME's assistance to make findings concerning the significance of the results as they pertain to the cardiac listings. Because the ALJ issued his decision without receiving further medical opinion, plaintiff maintains it follows that the record was not adequately developed.

Plaintiff does not address the ALJ's decision. The ALJ first noted he obtained additional evidence after the hearing, proffered it to the claimant, and the claimant did not respond to the proffer. (AR 15.) Specifically, in a letter dated April 21, 2017, the ALJ advised plaintiff's counsel an exhibit containing the cardiac catheterization procedure/report and other treatments had been received (*see* AR 667-78) and that plaintiff had a right to submit written comments or a statement addressing that evidence, any additional records he wanted considered, or written questions to be

ORDER
PAGE - 5

sent to the author of the new evidence. (AR 270.) Plaintiff could also request a supplemental hearing and request or subpoena a witness to appear for questioning. (AR 270-71.)

At step three, the ALJ explained Listing 4.06C requires a demonstration of symptomatic congenital heart disease (cyanotic or acyanotic) documented by appropriate medically acceptable imaging or cardiac catheterization, with secondary pulmonary vascular obstructive disease and pulmonary arterial systolic pressured elevated to at least seventy percent of the systemic arterial systolic pressure. (AR 18); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.06(C). He concluded:

> The evidence does not document a pulmonary arterial systolic pressure of at least 70 percent. In reaching this conclusion, significant weight is given to Dr. West's opinion that the evidence does not document a listing level of severity. Dr. West noted that the record does not show the claimant's pulmonary oxygen pressure. He testified it is possible that the claimant's systolic pressure may have been over 70 percent due to his pulmonic insufficiency but he could not make this assessment without the evidence. He did point out that the claimant did not have an oxygen saturation below 90 %. Even if the evidence did show this level of pulmonary pressure during the preoperative procedure done in March of 2016, the impairment would not meet a listing level because it was addressed in the March of 2016 procedure and did not persist for 12 continuous months. As discussed more thoroughly below, in the 6 months prior to the surgery the claimant had few actual limits. By May of 2016, his pulmonary hypertension is noted to be mild and he had improved to the point where his providers released him to activity that included up to a 50 pound weight restriction.

(AR 18 (citing AR 568, 584, and 594).)

At step four, the ALJ described the testimony of plaintiff and the ME. The ME testified plaintiff did well following repair of a heart defect in his youth, until early 2016 when he had some chest pain and arrhythmias. (AR 20.) An echocardiogram showed significant pulmonary insufficiency and plaintiff had some electrical abnormalities and ventricular tachycardia. The valve was replaced in March 2016 and an ICD placed, and he had since then done reasonably well.

ORDER
PAGE - 6

Plaintiff testified, in the year prior to surgery, he would get short of breath every day, had chest pain two-to-three times a day, found it hard to do any type of hard labor, and became short of breath even with walking and sitting. He had catheterization, surgery, and placement of a defibrillator in March 2016. The defibrillator had not fired since placement, he sometimes has chest pain once a week, rarely is short of breath, and has been told to follow up with his heart surgeon once a year. At the second hearing, plaintiff testified he has chest pain once or twice a week, for which he takes Tylenol.

The ALJ described the medical evidence dated both before and after cardiac surgery. Plaintiff appeared for a cardiac evaluation on May 1, 2015. (AR 21.) He had a history of congenital heart disease status post-surgery at age three and a history of heroin, methamphetamine, and marijuana use. He had not seen a cardiologist for many years, had not used drugs for two months, stopping smoking three weeks earlier, and denied chest pain, shortness of breath, light headedness, dizziness, or palpitations. (AR 21, 278-80.) An echocardiogram showed a murmur, right bundle branch block, severe right ventricular dilation, and severe pulmonic regurgitation. (AR 21, 283.) On June 18, 2015, plaintiff reported occasional sharp chest pain lasting less than one minute, with no relationship to exertion and continued to report no shortness of breath, light-headedness, dizziness, or palpations. (AR 21, 281.) On September 22, 2015, plaintiff reported fleeting chest pain several times a day, not related to effort or position, and denied shortness of breath. (AR 21, 292.) He continued to exercise often, playing basketball with friends. He also reported palpitations, but no related shortness of breath or dizziness. A physician advised plaintiff would likely need a pulmonary valve replacement in the future, referred him for a cardiac MRI, and placed a monitor to evaluate dysrhythmia. (AR 21, 292-93.)

Due to worsening pulmonary valve regurgitation, plaintiff underwent a pulmonary valve

replacement to repair Tetralogy of Fallot on March 10, 2016. (AR 21, 329.) He participated in cardiac rehabilitation and, by May 26, 2016, denied shortness of breath, palpitations, chest pain, dizziness, or syncope. (AR 21, 566-68.) An echocardiogram showed a good surgical result, with good pulmonary valve function and only mild insufficiency, the right ventricle still enlarged, with moderate dysfunction, and normal size and function on the left. Plaintiff was encouraged to ease back into all activities, except heavy lifting, but could generally lift up to fifty pounds. Plaintiff wondered about SSI and was told he was not considered to have a cardiac disability at that time. (AR 567-68.) He was told to follow up with a cardiologist in a year. By June 20, 2016, plaintiff reported the ability to go out for walks and occasionally play basketball, and did not feel limited in his day-to-day activities. (AR 21-22, 584 ("Explained to pt that he is young and it is important for him to remain active and pursue a healthy cardiac lifestyle to prolong his life and surgery.")) There was no follow up for his heart condition after that date.

The ALJ found that, in addition to reports of symptoms and the treating record showing no intervention was warranted until March 2016, the evidence also showed substantial improvement with surgical intervention. (AR 22.) Moreover:

> The claimant's activities both before and after the surgery also demonstrate that the claimant did not have a disabling physical impairment. Less than six months prior to surgery the claimant was still playing basketball. His chest pain was fleeting and unrelated to exertion and he had no shortness of breath. Although his condition worsened to the point that surgery was warranted by March of 2016, shortly after the surgery he was going out for walks and occasionally playing basketball.

(AR 22.)

The ALJ, finally, addressed the opinion evidence. The ALJ accorded significant weight to the opinion of Dr. West, the ME, finding it consistent with the objective evidence, including

ORDER
PAGE - 8

treatment prescribed, the echocardiograms, MRI, and reports of symptoms both prior to and after surgery, and consistent with evidence obtained after Dr. West's review of the record. (AR 24.) The ALJ nonetheless found a sedentary exertional level warranted for the entire time period to prevent exacerbation of symptoms. The ALJ gave some weight to the opinion of the nurse practitioner who encouraged plaintiff to ease back into all activities except heavy lifting and found him able to lift up to fifty pounds, finding it demonstrated plaintiff was not more limited than assessed in the RFC. The ALJ gave partial weight to the opinion of a non-examining State agency medical consultant who found plaintiff could perform light work with various postural and environmental limitations, finding it consistent with the evidence at the time of review in September 2015, but additional limitations warranted based on evidence obtained subsequent to that review and to prevent exacerbations.

An ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). That duty exists even when a claimant is represented by counsel. *Id.* An ALJ must assist the claimant in acquiring medical evidence by making an initial and follow-up request. § 416.912(b)(1). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). *Accord Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoted sources omitted). This duty may be discharged in several ways, such as by subpoenaing or submitting questions to physicians, continuing the hearing, or keeping the record open after the hearing to allow for its supplementation. *Id.*

However, the claimant bears the ultimate responsibility to prove disability. 20 C.F.R. § 416.912(a). The claimant must inform the SSA about or submit all known evidence related to disability, a duty that is ongoing and applies at each level of administrative review, including the Appeals Council. *Id*. If asked, the claimant must inform the SSA about his or her medical sources and other relevant factors. *Id*.

Plaintiff does not contend the medical records added after the hearing show he met or equaled a listing at step three. He does not suggest the existence of any other records supporting his claim for disability. He fails to address the fact that, in addition to obtaining records after the hearing and seeking a follow-up opinion from the ME, the ALJ provided plaintiff the opportunity to respond to the new evidence and to hold another hearing, with witness questioning. He further fails to offer any argument in opposition to the reasoning provided for the ALJ's conclusions regarding cardiac-related impairments. Plaintiff merely assumes continuing ambiguity in the evidence given the absence of an additional ME opinion. He also inaccurately suggests the Commissioner rests her assertion of a lack of ambiguity solely on evidence of improvement after surgery.

Plaintiff does not demonstrate error in the development of the record or otherwise. In addition to the evidence of improvement after surgery, the ALJ found the evidence showed "in the 6 months prior to the surgery the claimant had few actual limits." (AR 18.) The evidence included both plaintiff's own symptom reporting and his engagement in strenuous physical activity. (AR 21-22.) Plaintiff's burden to establish disability required him "to make out a case both that [he] has an impairment listed in the regulations, and that [he] . . . met the [twelve month] duration requirement." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). *See also* 42 U.S.C. § 1132c(a)(3)(A) ("an individual shall be considered to be disabled . . . if he is unable to engage in

ORDER
PAGE - 10

any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."); 20 C.F.R. §§ 416.905, 909 (same). The ALJ here reasonably concluded that, even if there was evidence of pulmonary arterial systolic pressure of at least seventy percent during the March 2016 preoperative procedure, the impairment would not be at listing level severity because it was addressed in the procedure and did not persist for twelve continuous months. (AR 18.) Plaintiff does not undermine the substantial evidence support for this or any other conclusion of the ALJ, or demonstrate any failure to comply with the duty to develop the record.

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 18th day of June, 2019.

Mary Alice Theiler
United States Magistrate Judge